UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.

                Plaintiff,                            MEMORANDUM AND ORDER
                                                              17-CV-1191

   - against -

RIGHT BRAIN RESTAURANT, INC.
D/B/A TACOS MORELOS
and PEDRO PABLO CASTRO

                Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff J & J Sports Productions, Inc. ("J & J" or "Plaintiff") alleges various violations of the Federal Communications Act of 1934, codified at 47 U.S.C. §§ 553 and 605, against defendants Right Brain Restaurant, Inc. D/B/A Tacos Morelos ("Tacos Morelos") and its principal, Pedro Pablo Castro ("Castro"). Defendants were duly served but failed to appear. J & J obtained a certificate of default and now moves the Court to enter default judgment and award damages. For the reasons stated herein, Plaintiff's motion is GRANTED in part and DENIED in part.

## BACKGROUND

       Plaintiff has initiated hundreds of cases in this District, and has moved for default judgment in over one hundred of them. The facts of each case, including this one, are virtually identical. J & J licenses the rights to exhibit closed-circuit, pay-per-view television events. ECF 1, Complaint ("Complt."), at ¶ 10. Commercial establishments contract with J & J to access a closed-circuit event and televise it to their clientele in exchange for a fee. Id. at ¶ 11. The event

1

transmissions are electronically coded and only accessible with decoding equipment provided to establishments that contract with J & J.  Id. at ¶¶ 12, 14.

J & J alleges that it owned the exclusive distribution rights in New York to the March 8, 2014 boxing match between Saul Alvarez and Alfredo Angulo (the "Event").  Id. at ¶ 7.  J & J claims that the license agreement allowed it "to sublicense the rights to the marketing and/or sales to the eventual exhibitors of the fight," and that "[i]n this particular case the plaintiff utilized the services of G & G Closed Circuit Events, LLC to handle its marketing and sales." Id. at ¶ 9.  It is alleged that both J & J and G & G "contracted with various establishments throughout New York and granted to such establishments the right to broadcast the Event in exchange for a fee."  Id. at ¶ 11.  It is also alleged that all commercial establishments in New York were required to obtain authorization from J & J, "and/or its sub-licensee G & G Closed Circuit Events, LLC" to exhibit the Event.  Id. at ¶¶ 7, 10.

J & J advertised the Event on a rate sheet that was filed with this motion (the "Rate Sheet").  ECF 12-3.  The Rate Sheet displays a logo for G & G Closed Circuit Events, LLC ("G & G") and lists the costs to televise the Event based on the capacity of the establishment.  Id. The Rate Sheet also provides contact information for Jaime Gallegos, the National Sales Manager of G & G.  Id.

Tacos Morelos is a restaurant located in Jackson Heights, New York.  Complt at ¶ 5.  J & J alleges that Tacos Morelos did not obtain the required authorization from J & J, or G & G, to broadcast the Event, but nonetheless intercepted and televised the Event on its premises.  Id. at ¶¶ 13, 15.  J & J submits an affidavit from a third party auditor who swears he visited Tacos Morelos on March 8, 2014 at 11:00 p.m. and witnessed a broadcast of the Event attended by 20

patrons. ECF 12-2. The complaint also alleges that Tacos Morelos collected a cover charge of $10 to view the Event. Id.

J & J initiated this action on March 02, 2017, alleging various violations of the Federal Communications Act, 47 U.S.C. §§ 553 and 605. Defendants were duly served on April 19, 2017, but never appeared.[1] ECF 5, 6. On May 30, 2017, Magistrate Judge Kuo ordered Plaintiff to Show Cause why no affidavit of service had been filed regarding the summons issued on March 2, 2017. See ECF Entry dated May 30, 2017. On June 2, 2017, Plaintiff filed affidavits of service and a Response to the Order to Show Cause, which indicated that Plaintiff's counsel was "attempting to settle this matter" but would move for a certificate of default should settlement not occur. ECF 7. On June 5, 2017, Magistrate Judge Kuo directed Plaintiff to file a Status Report if Plaintiff failed to file a stipulation of dismissal or a request for a certificate of default by July 5, 2017. See ECF Entry dated June 5, 2017. A certificate of default was entered on July 6, 2017, at the request of Plaintiff. ECF 9. On August 7, 2017, Magistrate Judge Kuo ordered Plaintiff to Show Cause why it had not moved for default judgment within 30 days. See ECF Entry dated Aug. 7, 2017. J & J moved for default judgment on September 6, 2017. ECF 10.

---

[1] The defendants were properly served. Under Fed. R. Civ. P. 4(h)(1)(B), service on a corporation is complete if the summons and complaint are delivered to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Plaintiff served Tacos Morelos at its business address by delivering the pleadings to "Naomi Cruz," who was identified as the managing agent and who affirmed she was authorized to accept service on behalf of Tacos Morelos. ECF 5. Defendant Castro is an individual and could be served in accordance with the rules of New York. Fed. R. Civ. P. § 4(e)(1). Castro was served at Tacos Morelos, allegedly his actual place of business, by delivering a copy of the summons and complaint to "Naomi Cruz," his co-worker, and mailing a copy of the pleadings addressed to Castro to Tacos Morelos, in satisfaction of New York C.P.L.R § 308(2). ECF 6.

**DISCUSSION**

I. **Legal Standards**

   A. *Default Judgment*

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for obtaining a default judgment. Step one requires the court clerk to enter the defendant's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. § 55(a). Plaintiff then moves for default judgment, and it "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . ." See Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted). The court must accept plaintiff's "factual allegations as true and draw all reasonable inferences in its favor," while also determining whether plaintiff's allegations establish defendant's liability as a matter of law. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). The court may "require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

   B. *Communications Act of 1934*

Section 553 of the Communications Act provides that a person shall not, without authorization, "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Similarly, Section 605 states that an unauthorized person may not "intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a).

## II.     Liability

Plaintiff asserts claims under Sections 553 and 605 of the Communications Act. Although conduct may violate both provisions, "in such circumstances, the court should award damages only under Section 605." J & J Sports Prod., Inc. v. El Ojo Aqua Corp., 13-CV-6173 (ENV) (JO), 2014 WL 4700014, at *2 (E.D.N.Y. Aug. 29, 2014), R&R adopted, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (citing cases). Plaintiff is entitled to damages under Section 605, so the Court need not address Plaintiff's other claims.

### A. *Tacos Morelos*

Plaintiff has sufficiently pled a valid claim for relief against Tacos Morelos under Section 605. J & J had an exclusive license to broadcast, distribute and sublicense the Match in New York. The only way Tacos Morelos could legally broadcast the Event was by contracting with J & J. Complt. at ¶¶ 10. Tacos Morelos did not obtain the proper authorization from J & J to broadcast the Event. Id. at ¶ 13, 15. Nonetheless, Tacos Morelos broadcasted the Event to 20 people at its establishment on March 8, 2014. ECF 12-2. Courts in this District have repeatedly held that Plaintiff's identical allegations are sufficient to plead a claim for relief under 47 U.S.C. § 605. J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15-CV-6505 (NGG)(PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (citing cases). As such, Tacos Morelos is liable for infringement under Section 605.

### B. *Pedro Pablo Castro*

Plaintiff also alleges that Castro is liable in his individual capacity as an officer, director, shareholder, or principal of Tacos Morelos. Complt. at ¶¶ 5, 15. A corporation's officers and directors are not liable for the corporation's infringement "unless they participate in or have knowledge of the violation." J & J Sports Prods., Inc. v. Emily Bar Rest. Inc., No. 15-CV-6499

5

(RJD)(SMG), 2016 WL 6495366, at *2 (E.D.N.Y. Sept. 27, 2016), R&R adopted, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016). "To establish a violation of 47 U.S.C. § 605(a) by an individual defendant, plaintiff must show that the individual defendant 'authorized' the violations set forth in the complaint." J & J Sports Prods., Inc. v. Benson, No. 06-CV-1119 (CPS), 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). Plaintiff does not allege that Castro authorized the infringing broadcast and, therefore, fails to allege facts sufficient to support individual liability against Castro.

Alternatively, Plaintiff may establish vicarious liability by showing that Castro "had a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials." Id. (citations and quotations omitted). To succeed under this theory, Plaintiff must offer more than a "formulaic recitation of the elements of a cause of action." Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Rather, a well-pled complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Complaint alleges only that Castro is an "officer, director, shareholder and/or principal of" Tacos Morelos, that he had "a right and ability to supervise the infringing activities," and "an obvious and direct financial interest in the exploitation of the copyrighted materials complained of herein." Complt. at ¶¶ 5, 15. These generic allegations are based solely on Castro's status as an officer, director, shareholder or principal of Tacos Morelos, and do not permit the Court to infer that he was positioned to supervise the infringing broadcast, or directly "participated in, authorized or ha[d] knowledge of the violation." Emily Bar Rest. Inc., 2016 WL 6495366, at *2.

Moreover, Plaintiff has not alleged that Castro had a direct financial interest in televising the Event. Plaintiff must make a stronger showing of financial gain to succeed. See e.g. LX Food Grocery, 2016 WL 6905946 at *3 (citing cases and noting that successful plaintiffs have either shown direct or strong indirect evidence of financial gain from the unauthorized broadcast). Because Plaintiff has not pled a cause of action against Castro individually, the motion for default judgment against Castro is denied and the claims against him are dismissed.[2]

**III.     Damages**

Plaintiff has established liability with regard to Tacos Morelos and is entitled to damages. Plaintiff seeks damages totaling $17,236.12. ECF 11, Memo. of Law ("MOL"), p. 18. For the reasons stated below, the Court awards statutory damages in the amount of $1,200.00 and costs of $470.00.

Damages require an independent evidentiary determination, Au Bon Pain, 653 F.2d at 65, during which the court must "ensure[] that there is a basis for the damages specified." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). Courts may not "just accept [Plaintiff's] statement of the damages" on its face. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). Instead, the damage award must be based on evidence that "provide[s] a sufficient basis from which to evaluate the fairness of the proposed sum." Fustok, 873 F.2d at 40 (upholding damage award where District Court "relied upon detailed affidavits and documentary evidence, supplemented by the District

---

[2] Plaintiff alleges that Castro is listed as the principal on Taco Morelos's New York State liquor license and "had a direct financial gain in the infringing activities." Complt. at ¶ 16. The liquor license, at best, may suggest Castro's general supervision over the establishment, "but does nothing to suggest either that [Castro] had anything to do with the decision to display the Event . . . or that he had an obvious and direct financial interest in the exploitation of the Event." El Ojo Aqua, 2014 WL 4700014, at *4; see also Johnny's Rest., 2016 WL 8254906, at *4.

7

Judge's personal knowledge of the record"); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (damages upheld where judge was "inundated with affidavits, evidence, and oral presentations by opposing counsel"); but see Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) (remanding for further damage analysis where the district judge calculated damages from "a single affidavit only partially based upon real numbers").

   A. *Statutory Damages*

Plaintiff seeks statutory damages in the amount of $4,299.00. Under 47 U.S.C § 605(e)(3)(C)(i)(II), Plaintiff may recover a per-violation recovery of an amount "not less than $1,000 or more than $10,000, as the court considers just." "Courts have interpreted the showing of an event on a single night as one violation." J & J Sports Prod., Inc. v. McAdam, No. 14-CV-5461 (PKC)(CLP), 2015 WL 8483362, at *4 (E.D.N.Y. Dec. 9, 2015). "The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the court." J & J Sports Prods., Inc. v. El Sonador Café Rest. Inc., No. 15-CIV-6934 (NG)(VMS), 2017 WL 598534, at *7 (E.D.N.Y. Jan. 3, 2017), R&R adopted, 2017 WL 591169 (E.D.N.Y. Feb. 14, 2017).

Courts in this District use two methods to calculate damages under Section 605(e)(C)(i)(II), and the higher of the two amounts is generally awarded. J & J Sports Prods. Inc. v. GPN Bar Inc., No. 15-CV-6504 (FB) (ST), 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15, 2016), R&R adopted, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017). Under the "flat-fee" method, the Court awards the amount that the establishment would have paid to license the event and broadcast it legally. Id.; see also LX Food Grocery, 2016 WL 6905946 at *4. Here, the auditor's affidavit indicates that 20 patrons were in the establishment while the Match was televised. ECF 12-2. Pursuant to the Rate Sheet, an establishment with a 20-person capacity

would pay $1,200.00 to J & J for the rights to broadcast the Event. ECF 12-3; see also MOL at p. 10. Therefore, damages under the flat-fee method are $1,200.00.

Under the second method, the "per-person" method, the Court multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the Event at home on a pay-per-view channel. McAdam, 2015 WL 8483362, at *4. Plaintiff alleges that $54.95 was the residential pay-per-view price to view the Event, and contends that the per-person method results in damages of $1,099.00, based on 20 patrons in the establishment multiplied by $54.95. MOL at p. 9; ECF 12, Hooten Aff., at ¶ 19.

There is no evidence to support the per-person damages Plaintiff seeks. The claimed award of $1,099.00 is based on an unsupported, speculative and questionable assumption that, had each of the unopposed 20 Tacos Morelos patrons stayed at home, he or she would have paid the cable provider $54.95 to view the Event. The only authority provided for that claim is the citation to other cases which granted that award. MOL at p. 9.[3] The Court addressed this issue in a previous case brought by Plaintiff. See J & J Sports Prods., Inc. v. Monte Limar Sports Bar

---

[3] In each of the cited cases, the court applied $54.95 to the per-person damage calculation, even though Plaintiff did not offer evidence supporting that amount. Instead, the court relied on still more cases that applied $54.95. See Hot Shots, Inc., 2010 WL 3522809, at *2 ("In this district, courts have often multiplied the number of patrons by $54.95, the price an individual would pay to view the event at home on a pay-per-view channel."); J & J Sports Prods., Inc. v. Arhin, No. 07-CV-2875 (SJ), 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) ("Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95."); Garden City Boxing Club, Inc. v. Taqueria La Mixteca, Inc., No. 07-CV-4479 (FB)(RER), 2008 WL 4107130, at *2 (E.D.N.Y. Sept. 4, 2008) (despite Plaintiff's failure to offer evidence of the amount to apply, noting that "in a similar case involving a telecast of the same boxing match at issue here, Garden City introduced evidence that the residential price for viewing the boxing match was $54.95"); Kingvision Pay-Per-View Ltd. v. Cazares, No. 05-CV-2934 (DGT), 2006 WL 2086031, at *3 (E.D.N.Y. July 25, 2006) (noting that a "private residence would have been able to purchase the [] event for $54.95," and citing Plaintiff's Memorandum of Law which only cites to additional cases that apply $54.95).

Inc., No. 15-CV-3771, 2017 WL 933079, at *1 (E.D.N.Y. Mar. 8, 2017). For those reasons, and because it yields the higher of the two amounts, the Court awards statutory damages of $1,200.00 under the flat-fee method.

The Court denies Plaintiff's request for additional damages of $2,000 for the loss of goodwill and future business. Hooten Aff., at ¶ 21. Plaintiff has not explained how this amount was calculated, nor has Plaintiff offered a legal basis for it. LX Food Grocery, 2016 WL 6905946 at *4.

   B. *Enhanced Damages*

Plaintiff also seeks enhanced damages, claiming that Tacos Morelos's infringement was willful. If an infringement "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). It is not clear whether Tacos Morelos acted willfully in televising the Event. The courts in this District have differed in their finding of willfulness in these cases. Compare Emily Bar Rest., 2016 WL 6495366, at *3 ("The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness.") to El Ojo Aqua, 2014 WL 4700014, at *6 ("An affirmative act can be done in good faith or bad, and the FCA explicitly recognizes that some violations . . . may be the result of an innocent mistake.").

In this instance, the Court need not address willfulness, because Plaintiff is not entitled to enhanced damages regardless. To determine whether willful conduct justifies an award of enhanced damages, the court considers "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover

charge or premiums for food and drinks." J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, Inc., No. 14-CV-2765 (JG)(JMA), 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015). While the defendant allegedly collected a cover charge, none of the other factors are present here. Plaintiff does not allege repeated violations by Tacos Morelos or that Tacos Morelos made significant monetary gains directly attributable to the televised Match; and Plaintiff's own evidence proves that Tacos Morelos did not advertise the Event or charge premiums for food and drink. See ECF 12-2; compare McAdam, 2015 WL 8483362, at *5 (enhanced damages awarded where defendant collected a $20 cover charge and advertised its exhibition of the event). As to the second factor, Plaintiff's only actual damages "are the lost licensing fee, which was already contemplated in the calculation of statutory damages above." GPN Bar Inc., 2016 WL 8139019, at *6.

Because there is insufficient evidence that enhanced damages would be justified in this case, the Court declines to award them.

*C. Costs and Interest*

Finally, Plaintiff seeks to recover costs and a 9% prejudgment interest. Pursuant to Section 605(e)(3)(B)(iii), a court is required to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." MOL at pp. 17-18. Plaintiff claims costs in the amount of $470.00, which represents the cost to file this case ($400) and to pay the process server ($70.00). Id. at p. 17; see also ECF 12-3. Plaintiff does not request attorney's fees. MOL at p. 18.

The Court may, in its discretion, award pre-judgment interest. However, prejudgment interest is not available if "the statutory obligation on which interest is sought is punitive in nature." Wickham Contracting Co. v. Local Union No. 3, IBEW, 955 F.2d 831, 834 (2d Cir.

1992).  Courts in this District generally decline to award prejudgment interest on damages for Communications Act violations because statutory damages under that Act "are analogous to punitive damages."  LX Food Grocery, 2016 WL 6905946 at *5 (citing cases).  For that same reason, the Court declines to award prejudgment interest here.

In accordance with the mandate of Section 605, Plaintiff's costs are awarded in the amount of $470.00, without interest.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for default judgment is granted in part and denied in part.  As to defendant Tacos Morelos, the motion for default judgment is granted with respect to its liability under 47 U.S.C. § 605.  Plaintiff is entitled to statutory damages of $1,200.00 and costs of $470.00, totaling $1,670.00.

As to defendant Pedro Castro, the motion for default judgment is denied and the claims against him are dismissed.  Any remaining claims in the Complaint are dismissed without prejudice.

SO ORDERED.

Dated:      Brooklyn, New York
            October 6, 2017

                                                          /s/
                                              I. Leo Glasser